FILED

2017 SEP -6  PM 1: 08

CLK U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
CLEVELAND

James Everett Shelton
11420 Hessler Road Apt 2
Cleveland, OH 44106
(484) 626-3942
Jeshelton595@gmail.com

Plaintiff, Pro Se

#14060098026

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| **JAMES EVERETT SHELTON**<br>11420 Hessler Road Apt 2<br>Cleveland, OH 44106<br><br>Plaintiff,<br>vs.<br><br>**LIG INTERNATIONAL LLC. ("LIG") dba<br>BISCAYNE CAPITAL GROUP<br>JOHN PAUL ELIAS,** individually and as<br>Manager of Business Development of LIG<br>**CARLOS MALOFF,** individually and in his<br>capacity as Funding Director of LIG<br>141 NE 3rd Avenue, Floor 5,<br>Miami, Florida, 33132<br><br>**YURI LIMA,** individually and as Chief Executive<br>Officer/Principal of LIG<br>423 NE 23rd Street, Unit 606,<br>Miami, Florida 33137<br><br>**DANNY JIMENEZ,** as individually and as<br>Principal / Authorized Member of LIG<br>780 NE 71st Street, Miami, Florida 33138<br><br>**MARCO JOSH TORRES,** as Principal /<br>Authorized Member of LIG<br>6770 Indian Creek Drive, Apt PHD,<br>Miami, Florida 33141<br><br>and<br>DOES 1 through 100, inclusive,<br><br>Defendants. | Civil Action<br>No._____<br><br>**1 : 17  CV  1868**<br><br>**JUDGE NUGENT**<br><br>**MAG. JUDGE GREENBERG**<br><br><br>**Jury Trial Demanded** |

1

## COMPLAINT:

Plaintiff JAMES EVERETT SHELTON brings this action for damages, restitution, reinstatement, statutory damages, punitive damages, sanctions, interest, court costs, and injunctive relief under rights pursuant to Federal Statute under 47 U.S.C. 227, and 47 C.F.R. 64 for the *ultra vires* illegal actions and deliberate and knowing tortious activity of LIG INTERNATIONAL LLC ("LIG") doing business as BISCAYNE CAPITAL GROUP, doing business as BISCAYNE CAPITAL FUNDING, JOHN PAUL ELIAS, individually and as President of Business Development of LIG ("Elias"), CARLOS MALOFF, individually and as Funding Director of LIG ("Maloff"), YURI LIMA, individually and as Chief Executive Officer of LIG ("Lima"), DANNY JIMENEZ, individually and as an Authorized Member of LIG ("Jimenez"), MARCO JOSH TORRES, individually and as an Authorized Member of LIG ("Torres"), and Does 1 through 100, inclusive, in negligently and/or willfully contacting Plaintiff via Plaintiff's telephone to solicit sales ("Sales Calls"), by utilization of an automatic telephone dialing system ("RoboCalls") in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq*. with deliberate transmission of false caller identification ("Caller ID Spoofing") in violation of the Truth in Caller ID Act of 2009, 47 U.S.C. 227(e) and related claims that form part of the same claim or controversy. Plaintiff demands a trial by jury, and complains and alleges as follows:

## I.      Introduction

1.      Defendant LIG INTERNATIONAL LLC. ("Company") is a Florida limited liability company with a registered address of 141 NE 3rd Avenue, Floor 5, Miami, Florida, 33132. LIG markets and sells, inter alia, business loan and "merchant cash advance" services to Americans on a nationwide scale.

2

2.      Plaintiff brings this action to challenge the Company's practices in the telephone solicitation of its products and services. Specifically, Plaintiff challenges Company's and Company's agents' illegal telephone solicitations by which it markets its products and services, illegal RoboCalls, illegal caller ID spoofing, and failure to place consumer's telephone numbers on their internal Do-Not-Call list, upon request, or to provide a copy of their company Do-Not-call policy, upon request.

3.      All of the claims asserted herein arise out of Company's illegal telephone solicitation campaign and are a common fact pattern.

## II.      Jurisdiction and Venue

4.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

5.      Venue is proper in this court in that Defendants conduct business in, and a substantial part of the events giving rise to plaintiff's claims occurred in, Ohio's Cuyahoga County. Plaintiff received the phone calls to his private mobile telephone number as a resident of Cuyahoga County. Each of the Defendants has sufficient minimum contacts with this county, and otherwise purposely avail themselves of the markets in this county. Also, see *Lary V. The Doctors Answer, LLC* CV-12-S-3510-NE (N.D. Ala. March 8, 2013.), a Federal Telephone Consumer Protection Act case, which held that "venue is proper in the district where [plaintiff] resides because the injury did not occur when the facsimile was sent…; it occurred when the [facsimile] was received."

## III.      Parties

6.      Plaintiff JAMES EVERETT SHELTON ("Plaintiff") is an individual who received the

3

alleged phone calls on his private mobile telephone line mentioned herein. Plaintiff is an adult individual and resident of the State of Ohio who resides at 11420 Hessler Road Apt 2, Cleveland, Ohio 44106.

7.      Defendant LIG INTERNATIONAL LLC. ("Company") doing business as BISCAYNE CAPITAL GROUP is a Florida limited liability company with a registered address of 141 NE 3rd Avenue, Floor 5, Miami, Florida 33132 which transacts business in, *inter alia*, Cuyahoga County. Company markets and sells business loans and "merchant cash advance" services to people nationwide.

8.      Defendant YURI LIMA ("LIMA") is an adult individual who is the Chief Executive Officer / Principal of Company, and upon information and belief is the Company's Primary Owner. LIMA is an adult individual and citizen of the United States. As Chief Executive Officer of Company, LIMA is the primary individual who reaps the benefit of the tortious and illegal conduct described herein that is technically carried out only in Company's name. Such tortious, or *ultra vires*, conduct exceeds the permissible actions of corporations both in Florida, Ohio, and nationwide. LIMA has a registered mailing address of 423 NE 23rd Street, Unit 606, Miami, Florida 33137.

9.      Defendant DANNY JIMENEZ is an adult individual who is an Authorized Member of Company. JIMENEZ is an adult individual and citizen of the United States. As Authorized Member of Company, JIMENEZ reaps the benefit of the tortious and illegal conduct described herein that is technically carried out only in Company's name. Such tortious, or *ultra vires*, conduct exceeds the permissible actions of corporations both in Florida, Ohio, and nationwide. Jimenez has a registered mailing address of 780 NE 71st Street, Miami, Florida, 33138.

4

10.     Defendant MARCO JOSH TORRES is an adult individual who is an Authorized Member of Company. TORRES is an adult individual and citizen of the United States. As Authorized Member of Company, TORRES reaps the benefit of the tortious and illegal conduct described herein that is technically carried out only in Company's name. Such tortious, or *ultra vires*, conduct exceeds the permissible actions of corporations both in Florida, Ohio, and nationwide. TORRES has a registered mailing address of 6770 Indian Creek Drive, Apt PHD, Miami, Florida 33141.

11.     Defendant JOHN PAUL ELIAS is an adult individual who is the President of Business Development of Company. ELIAS is an adult individual and citizen of the United States. As President of Business Development of Company, ELIAS reaps the benefit of the tortious and illegal conduct described herein that is technically carried out only in Company's name. Such tortious, or *ultra vires*, conduct exceeds the permissible actions of corporations both in Florida, Ohio, and nationwide. ELIAS may be served at Company's principal address of 141 NE 3rd Avenue, Floor 5, Miami, Florida 33132.

12.     Defendant CARLOS MALOFF is an adult individual who is the Funding Director of Company. MALOFF is an adult individual and citizen of the United States. As Funding Director of Company, MALOFF reaps the benefit of the tortious and illegal conduct described herein that is technically carried out only in Company's name. Such tortious, or *ultra vires*, conduct exceeds the permissible actions of corporations both in Florida, Ohio, and nationwide. MALOFF may be served at Company's principal address of 141 NE 3rd Avenue, Floor 5, Miami, Florida 33132.

13.     Except as described herein, Plaintiff is ignorant of the true names of Defendants sued

as Does 1 through 100, inclusive, and the nature of their wrongful conduct, and therefore sues these Defendants by such fictitious names. Plaintiff will seek leave of the Court to amend this complaint to allege their true names and capacities when ascertained.

14.    At all times herein mentioned, Company, LIMA, JIMENEZ, TORRES, ELIAS, MALOFF, and the Doe Defendants, (collectively, "Defendants"), and each of them, were an agent or joint venture of each of the other, and in doing the acts alleged herein, were acting within the scope of such agency. Each Defendant had actual and/or constructive knowledge of the acts of each of the other Defendants, and ratified, approved, joined in, acquiesced and/or authorized the wrongful acts of each co-Defendant, and/or retained the benefits of said wrongful acts.

15.    Defendants, and each of them, aided and abetted, encouraged and rendered substantial assistance to the other Defendants in committing the wrongful acts alleged herein. In taking action, as particularized herein, to aid and abet and substantially assist the commission of these wrongful acts and other wrongdoing complained of each of the Defendants acted with an awareness of its primary wrongdoing and realized that its conduct would substantially assist the accomplishment of the wrongful conduct, wrongful goals, and wrongdoing.

16.    Defendants Yuri Lima, Danny Jimenez, Marco Josh Torres, John Paul Elias, and Carlos Maloff are all personally liable under the "participation theory" of liability because they were either Managers and or Authorized Members of LIG, knew of LIG's violations, and direct employees and/or agents of LIG to continue making those violations.

17.    At all times herein mentioned, Defendants conspired by means of mutual understanding, either expressly or impliedly, among themselves and others in engaging and/or planning to

6

engage in the activities detailed herein to accomplish the wrongful conduct, wrongful goals, and wrongdoing.

## Background
### The Telephone Consumer Protection Act

18.     In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . .can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

19.     The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. See 47 C.F.R. § 64.1200(c)(2). A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." Id.

20.     The TCPA and implementing regulations prohibit the initiation of telephonesolicitations to residential telephone subscribers to the Registry. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2).

The TCPA Prohibits Automated Telemarketing Calls.

21.     The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." See 47 U.S.C. § 227(b)(1)(A)(iii). The TCPA

provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A). See 47 U.S.C. § 227(b)(3).

22.     According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

23.     The FCC also recognized that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991, CG Docket No. 02-278, Report and Order, 18 F.C.C. Rcd. 14014, 14115 ¶ 165 (2003). In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines.

Specifically, it ordered that:

[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"

8

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*,

27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

## IV.     Factual Allegations

24.     In or about June 14, 2017, Plaintiff received the first of multiple "robocall"

solicitations by Defendants and/or their agents at Plaintiff's personal mobile telephone, 484-626-

3942. Plaintiff had not consented to this solicitation.

25.     The unsolicited telephone call was placed to Plaintiff's personal mobile telephone

number and utilized an "automatic telephone dialing system" or "robocall," to transmit a

message, as prohibited by 47 U.S.C. § 227(b)(1)(B).

26.     The telephone call was a "robocall" because there was a delay before an agent

answered the phone, and because the call made a characteristic computerized "balloon popping"

sound just before the call was connected.

27.     The call on June 14 was "spoofed" with the fake caller ID information of 484-810-1716,

number that, upon calling back, always is "busy" with a quintessential "boop, boop boop…"

sound. It also displayed fake caller ID location of "Springfield, PA".

28.     Plaintiff pays for each incoming and outgoing call on his telephone under an

unlimited calling arrangement, as defined and set forth in 47 CFR § 64.1200(a)(1)(iii).

29.     Plaintiff's telephone number was on the National Do-Not-Call registry since 2015.

30.     During that call, Plaintiff took steps to ascertain the identity of the caller and feigned

interest for this exact reason, namely by requesting that Company send Plaintiff an email with

their company information. Plaintiff received an e-mail from Defendant JOHN PAUL ELIAS on

June 14, 2017 at 12:37 PM.

31.     As a point of fact, to the extent that "consent" was supplied during the call, that was

9

done in order to discover the identity of the caller and for no other reason. Courts have held this

to be legitimate and have not held such "consent" to be detrimental to a plaintiff bringing a

TCPA action. *See* for instance, Bank v. Caribbean Cruise Line, which held that "Purporting to

obtain consent during the call, such as requesting that a consumer "press 1" to receive further

information, does not constitute the prior consent necessary to deliver the message in the first

place, as the request to "press 1" is part of the telemarketing call.... As the FCC has stated, the

consent must be made before the call."

32.     Despite this, Plaintiff received another call on June 14 from the same caller ID. This call

like the first, was an illegal robocall, and, like many robocalls, played a machine noise. The call

was "spoofed" with the fake caller ID information of 484-810-1716, a number that is

disconnected.

33.     Upon answering, Plaintiff received a scripted sales pitch about business loans from

"Biscayne Capital Funding". Plaintiff was not interested in a loan and did not give the

Defendants consent to call back.

34.     Plaintiff then received a call from (305) 509-1016 at 11:50 AM on June 15, 2017.

Plaintiff did not recognize the number, so he allowed it to go to his voicemail.

35.     On June 19, 2017, Plaintiff received another call from the same number, (305) 509-1016.

Plaintiff briefly spoke with Carlos Maloff, a funding director at Biscayne Capital Funding a/k/a

LIG. Plaintiff received an e-mail from Maloff, but did not give him permission or consent to call

back.

36.     On June 21, 2017, Plaintiff received a call from (786) 528-2360. The call was a

"robocall" because there was a significant delay before the other party answered and there was a

period of silence before the other party answered.

10

37.     Plaintiff spoke to the agent and received a scripted sales pitch about business loan and/or merchant cash advance services.

38.     When asked to be placed on Company's Do-Not-Call list and send Plaintiff a copy of Company's Do-Not-Call policy, the agent hung up, and Plaintiff's request was refused.

39.      The unsolicited "robocall" telephone call transmitted false caller ID information which was deliberately used by Company in order to conceal Company's identity and illegal actions.

40.     On July 27, 2017, at 5:45 PM local time, Plaintiff was on vacation in the Netherlands, when he received a call from (484) 268-5802. Upon answering, Plaintiff heard dead air, and said "hello" into his phone multiple times. This was followed by a "boop", and the call disconnected.

41.     On July 27, 2017, at 8:26 PM local time, Plaintiff was still on vacation in the Netherlands, and while eating dinner, he received a call from the same number above, (484) 268-5802. Plaintiff got up from his chair to answer the phone, but he experienced the same situation-dead air, followed by the call disconnecting.

42.     To his dismay and further frustration, Plaintiff was charged $0.40 for both of the calls that took place while he was overseas, since he pays by the minute while roaming overseas.

43.     On August 1, 2017, after returning to the United States, Plaintiff received another call from the Defendants, utilizing the same caller ID, (484) 268-5802. This time, Plaintiff spoke with Carlos Maloff again at 2:08 PM. Plaintiff was not interested in the Defendant's services, and only spoke to Maloff for the sole purposes of ascertaining and confirming his identity. Plaintiff received another email from Defendants the same day at 2:46 PM.

44.     On August 3, 2017, Plaintiff received a missed call from the same number, (484) 268-5802 at 12:55 PM.

11

45.     On August 4, 2017, Plaintiff received another robocall from 484-268-5802 at 9:33 AM. Upon answering, Plaintiff was hung up on.

46.     On August 4, 2017, Plaintiff received another robocall from 484-268-5802 at 10:15 AM. Upon answering, Plaintiff was hung up on.

47.     Plaintiff received additional robocalls from 484-268-5802 on the following dates and times: August 8, 2017 at 9:22 PM, August 9, 2017 at 10:41 AM, August 21, 2017 at 9:41 AM, August 23, 2017 at 9:57 AM, and August 29, 2017 at 9:54 AM.

48.     Plaintiff also got a call from Carlos Maloff at Biscayne Capital Funding, (305) 509-1016 on August 22, 2017 at 11:05 AM.

49.     As of the date of this filing, Plaintiff continues to receive calls from Defendants, and has good reason to believe that more unsolicited calls will continue to rain down upon him.

50.     Plaintiff received the calls on his private mobile telephone, as defined and set forth in 47 CFR § 64.1200(a)(1)(iii). Plaintiff's telephone number is registered with T-Mobile as a cellular telephone number and is used for personal purposes, among other things.

51.     These telephone solicitations constituted "calls" under the TCPA that were not for emergency purposes.

52.     Plaintiff did not provide any one, more, or all Defendants, nor any agent of Defendants, prior express written consent, or any other form of consent, express or implied, to cause Plaintiff to receive telephone calls on his personal telephone that utilized an "automatic telephone dialing system" to transmit a message or make calls.

53.     Plaintiff had no prior business relationship with any one, more, or all of Defendants.

54.     The telephone Sales Calls and robocalls therefore violated 47 U.S.C. § 227(b)(1)(A), 47

12

U.S.C. § 227(c)(3)(F), 47 U.S.C. § 227(e), 47 CFR 64.1200(d)(1), 47 CFR 64.1200(d)(3), 47

CFR § 64.1200(a)(1)(iii), 47 CFR § 64.1200(a)(1), and 47 C.F.R. 64.1200(c)(2).

## V.    Causes Of Action

### First Cause of Action

(Negligent Violation of the TCPA "RoboCall" Prohibition, 47 U.S.C. § 227 et seq.)

55. Plaintiff incorporates and realleges, as though fully set forth herein, each of the
paragraphs above.

56.  As a result of Defendants' and Defendants' agents negligent violations of 47 U.S.C.
§ 227(b)(1)(A), Plaintiff seeks for himself $500.00 in statutory damages, for each and every
violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

57. Pursuant to 47 U.S.C. § 227(b)(3)(A), Plaintiff seeks injunctive relief prohibiting
such conduct in the future.

### Second Cause of Action

(Knowing and/or Willful Violation of the TCPA
"RoboCall" Prohibition, 47 U.S.C. § 227 et seq.)

58. Plaintiff incorporates and realleges, as though fully set forth herein, each of the
paragraphs above.

59. As a result of Defendants' and Defendants' agents knowing and/or willful violations
of 47 U.S.C. § 227(b)(1)(A), Plaintiff seeks for himself treble damages, as provided by statute,
up to $1,500.00 for each and every violation, pursuant to 47 U.S.C. § 227(b)(3).

60.  Pursuant to 47 U.S.C. § 227(b)(3)(A), Plaintiff seeks injunctive relief prohibiting
such conduct in the future.

**Third Cause of Action**

(Negligent Violation of the TCPA "Sales Call" Prohibition, 47 U.S.C. § 227 et seq.)

61. Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

62. As a result of Defendants' and Defendants' agents negligent violations of 47 U.S.C. § 227(c)(3)(F), and 47 C.F.R. 64.1200(c)(2), Plaintiff seeks for himself $500 in statutory damages for each and every violation, pursuant to 47 U.S.C. § 227(c)(3)(F).

63.  Pursuant to 47 U.S.C. § 227(c)(5)(A), Plaintiff seeks injunctive relief prohibiting such conduct in the future.

**Fourth Cause of Action**

(Knowing and/or Willful Violation of the TCPA
"Sales Call" Prohibition, 47 U.S.C. § 227 et seq.)

64. Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

65. As a result of Defendants' and Defendants' agents knowing and/or willful violations of 47 U.S.C. § 227(c)(3)(F), and 47 C.F.R. 64.1200(c)(2), Plaintiff seeks for himself treble damages, as provided by statute, up to $1,500.00 for each and every violation, pursuant to 47 U.S.C. § 227(c)(5).

66.  Pursuant to 47 U.S.C. § 227(c)(5)(A), Plaintiff seeks injunctive relief prohibiting such conduct in the future.

**Fifth Cause of Action**

14

(Negligent Violation of the TCPA "Do-Not-Call Policy" Requirement, 47 CFR 64.1200 et seq.)

67. Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

68. As a result of Defendants' and Defendants' agents negligent violations of 47 CFR 64.1200(d)(1), Plaintiff seeks for himself $500 in statutory damages for each and every violation, pursuant to the implied private right of action.

### Sixth Cause of Action

(Knowing and/or Willful Violation of the TCPA
"Do-Not-Call Policy" Requirement, 47 CFR 64.1200 et seq.)

69. Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

70. As a result of Defendants' and Defendants' agents knowing and/or willful violations of 47 CFR 64.1200(d)(1) Plaintiff seeks for himself treble damages, as implied, up to $1,500.00 for each and every violation, pursuant to the implied private right of action.

### Seventh Cause of Action

(Negligent Violation of the TCPA "Do-Not-Call List" Requirement, 47 CFR 64.1200 et seq.)

71. Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

72. As a result of Defendants' and Defendants' agents negligent violations of 47 CFR 64.1200(d)(3), Plaintiff seeks for himself $500 in statutory damages for each and every violation, pursuant to the implied private right of action.

### Eight Cause of Action

(Knowing and/or Willful Violation of the TCPA
"Do-Not-Call List" Requirement, 47 CFR 64.1200 et seq.)

73. Plaintiff incorporates and realleges, as though fully set forth herein, each of the

paragraphs above.

74. As a result of Defendants' and Defendants' agents knowing and/or willful violations

of 47 CFR 64.1200(d)(3) Plaintiff seeks for himself treble damages, as implied, up to $1,500.00

for each and every violation, pursuant to the implied private right of action.

**<u>WHEREFORE, Plaintiff prays for relief against defendants, and each of them, as follows:</u>**
**VI.     <u>Prayer for Relief</u>**

On Causes of Action 1-8:

    1.   For awards of $500 for each negligent violation as set forth in actions 1-8;

    2.   For awards of $1,500 for each knowing and/or willful violation as set forth in actions

1-10.

    3.   Injunctive relief against Defendants, and each of them, to prevent future wrongdoing;

Total statutory damages: **<u>$37,000</u>** (Seventeen counts each of: "sales call", "robocall", and one

count each of: failure to put Plaintiff's number on Defendants' Do-Not-Call list, and failure to

provide Plaintiff a copy of Defendants' Do-Not-Call policy, with treble damages for each.)

    4.   Prejudgment interest at the maximum legal rate;

    5.   Costs of suit herein incurred; and

    6.   All such other and further relief as the Court deems proper.

## VII.    Demand for Jury Trial

Plaintiff hereby demands a trial by jury on all claims so triable.

Dated: September 6, 2017

James E. Shelton

James Everett Shelton
*Plaintiff Pro-Se*
11420 Hessler Road Apt 2
Cleveland, OH 44106
Phone: 484-626-3942
Jeshelton595@gmail.com