James Everett Shelton
11420 Hessler Road Apt 2
Cleveland, OH 44106
(484) 626-3942
jeshelton595@gmail.com
Plaintiff, Pro Se

FILED

17 DEC -11 AM 11: 39

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
CLEVELAND

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| **JAMES EVERETT SHELTON**<br>**11420 Hessler Road Apt 2,**<br>**Cleveland, OH 44106**<br>　　　　　　　**Plaintiff,**<br>　　　　　　　　　　**vs.**<br><br>**LIG INTERNATIONAL, LLC dba BISCAYNE**<br>**CAPITAL GROUP dba BISCAYNE CAPITAL**<br>**FUNDING**<br><br>**YURI LIMA, individually and as Chief Executive**<br>**Officer/Principal of LIG**<br>**1040 Biscayne Blvd, Apt 1607**<br>**Miami, Florida 33132**<br><br><br>**And DOES 1-100, inclusive**<br><br>　　　　　　　**Defendant** | ) Civil Action No. 1:17-cv 01868<br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>**Jury Trial Demanded** |

## PLAINTIFF's SECOND AMENDED COMPLAINT:

Plaintiff JAMES EVERETT SHELTON brings this action for damages, restitution,

reinstatement, statutory damages, interest, court costs, and injunctive relief under rights pursuant

to Federal Statute under 47 U.S.C. 227, and 47 C.F.R. 64 for the *ultra vires* illegal actions and

deliberate and knowing tortious activity of the LIG INTERNATIONAL LLC doing business as

BISCAYNE CAPITAL FUNDING, doing business as BISCAYNE CAPITAL GROUP (herein

"LIG") and YURI LIMA, in negligently and/or willfully contacting Plaintiff via Plaintiff's

telephone to solicit sales ("Sales Calls") using an automatic telephone dialing system

1

("robocalls") in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* in violation of 47 U.S.C. 227(e) and related claims that form part of the same claim or controversy. Plaintiff demands a trial by jury, and complains and alleges as follows:

## I.      Introduction

1.      Plaintiff James Everett Shelton ("Plaintiff") brings this action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, a federal statute enacted in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 745 (2012).

2.      Plaintiff brings this action to challenge LIG's practices in the telephone solicitation of its products and services. Specifically, Plaintiff challenges LIG's and LIG's agents' illegal telephone solicitations by which it markets its products and services through its sales calls and robocalls.

3.      "Month after month, unwanted robocalls and texts, both telemarketing and informational, top the list of consumer complaints received by" the Federal Communication Commission.[1]

4.      The TCPA is designed to protect consumer privacy by prohibiting unsolicited telemarketing calls to cellular telephones, unless the caller has the "prior express written consent" of the called party.

5.      All of the claims asserted herein arise out of LIG's illegal telephone solicitation campaign and are a common fact pattern.

## II.      Jurisdiction and Venue

6.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

7.      Venue is proper in this court in that Defendants conduct business in, and a substantial

---

[1] *Omnibus TCPA Order*, GC Docket 02-278, FCC 15-72, 2015 WL 4387780, ¶ (July 10, 2015)

part of the events giving rise to plaintiff's claims occurred in, Ohio's Cuyahoga County. Plaintiff

is a third-year undergraduate student at Case Western Reserve University and has resided in the

State of Ohio at the address of 11420 Hessler Road Apt 2, Cleveland OH 44106 since August 25,

2017. As a resident of Ohio and while physically present in Ohio as a resident of Cuyahoga

County, Plaintiff received calls from the Defendants on August 29, September 15, and two calls

on November 6, 2017. Prior to residing in Ohio while at school, Plaintiff lived in the

Commonwealth of Pennsylvania. Each of the Defendants has sufficient minimum contacts with

this county, and otherwise purposely avail themselves of the markets in this county. Also, see

*Lary V. The Doctors Answer, LLC* CV-12-S-3510-NE (N.D. Ala. March 8, 2013.), a Federal

Telephone Consumer Protection Act case, which held that "venue is proper in the district where

[plaintiff] resides because the injury did not occur when the facsimile was sent…; it occurred

when the [facsimile] was received."

### III.   Parties

8.      Plaintiff JAMES EVERETT SHELTON ("Plaintiff") is an individual who received the

alleged phone calls on his private mobile telephone line mentioned herein. Plaintiff is an adult

individual and is a resident of the State of Ohio when he is attending school at Case Western

Reserve University at the address of 11420 Hessler Road Apt 2, Cleveland, Ohio 44106.

9.      Defendant LIG INTERNATIONAL LLC ("herein LIG") dba BISCAYNE CAPITAL

FUNDING dba BISCAYNE CAPITAL GROUP is Florida limited liability company with a

registered principal address of 141 NE 3rd Ave, 5th Floor, Miami, Florida 33132, which transacts

business in, *inter alia*, Cuyahoga County, Ohio. LIG markets and sells, *inter alia*, a variety of

insurance policies to businesses and individuals on a nationwide scale.

10.     Defendant YURI LIMA (herein "LIMA") an adult individual who is the Registered Agent and principal owner of LIG / BISCAYNE CAPITAL FUNDING. LIMA is the primary individual who reaps the benefit of the tortious and illegal conduct described herein that is technically carried out only in LIG's and BISCAYNE CAPITAL FUNDING's names. Such tortious, or *ultra vires*, conduct exceeds the permissible actions of corporations both in Ohio, Florida, and nationwide. LIMA has a residence of 1040 Biscayne Blvd, Apt 1607, Miami, Florida 33132.

11.     At all times herein mentioned, LIG and LIMA, (collectively, "Defendants"), and each of them, were an agent or joint venture of each of the other, and in doing the acts alleged herein, were acting within the scope of such agency. Each Defendant had actual and/or constructive knowledge of the acts of each of the other Defendants, and ratified, approved, joined in, acquiesced and/or authorized the wrongful acts of each co-Defendant, and/or retained the benefits of said wrongful acts.

12.     Defendants, and each of them, aided and abetted, encouraged and rendered substantial assistance to the other Defendants in committing the wrongful acts alleged herein. In taking action, as particularized herein, to aid and abet and substantially assist the commission of these wrongful acts and other wrongdoing complained of each of the Defendants acted with an awareness of its primary wrongdoing and realized that its conduct would substantially assist the accomplishment of the wrongful conduct, wrongful goals, and wrongdoing.

13.     At all times herein mentioned, Defendants conspired by means of mutual understanding, either expressly or impliedly, among themselves and others in engaging and/or planning to engage in the activities detailed herein to accomplish the wrongful conduct, wrongful goals, and wrongdoing.

4

**Background**

**The Telephone Consumer Protection Act**

14.     In 1991, Congress enacted the TCPA to regulate the explosive growth of the

telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing ...

can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L.

No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

15.     The National Do Not Call Registry allows consumers to register their telephone numbers

and thereby indicate their desire not to receive telephone solicitations at those numbers. See 47

C.F.R. § 64.1200(c)(2). A listing on the Registry "must be honored indefinitely, or until the

registration is cancelled by the consumer or the telephone number is removed by the database

administrator." Id.

16.     The TCPA and implementing regulations prohibit the initiation of telephone solicitations

to residential telephone subscribers to the Registry. 47 U.S.C. § 227(c); 47 C.F.R.

§ 64.1200(c)(2).

The TCPA Prohibits Automated Telemarketing Calls

16.     The TCPA makes it unlawful "to make any call (other than a call made for emergency

purposes or made with the prior express consent of the called party) using an automatic

telephone dialing system or an artificial or prerecorded voice to any telephone number assigned

to a cellular telephone service." See 47 U.S.C. 227(b)(1)(A)(iii). The TCPA provides a private

cause of action to persons who receive calls in violation of 47 U.S.C. 227(b)(1)(A). See 47

U.S.C. 227(b)(3). 17. According to findings by the Federal Communication Commission

("FCC"), the agency Congress vested with authority to issue regulations implementing the

5

TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

17.     The FCC also recognized that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991, CG Docket No. 02-278, Report and Order, 18 F.C.C. Rcd. 14014, 14115 ¶ 165 (2003). In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines.

Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

**The TCPA imposes personal liability on individuals who participate in or commission telemarketing calls.**

6

18.    Under the TCPA, an individual such as LIMA may be personally liable for the acts alleged in this Complaint pursuant to 47 U.S.C. § 227 of the TCPA, which reads, *inter alia*:

[T]he act, omission, or failure of any agent, or other person acting for or employed by any common carrier or user, acting within the scope of his employment, shall in every case be deemed to be the act, omission, or failure of such carrier or user *as well as of that person.*

47 U.S.C. § 227 (emphasis added).

19.    When considering individual officer liability, other Courts have agreed that a corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. See, *e.g., Jackson v. Five Star Catering, Inc., v. Beason,* 2013 U.S. Dist. LEXIS 159985, *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA "where they 'had direct, personal participation in or personally authorized the conduct found to have violated the statute.'"); *Maryland v. Universal Elections,* 787 F. Supp. 2d 408, 415-16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

20.    Defendant LIMA is personally liable under the "participation theory" of liability because he was Registered Agent and Principal owner of LIG, knew of LIG's violations, and directed employees and/or agents of LIG to continue making those violations.

21.    The individual Defendant in this lawsuit, LIMA, authorized and oversaw each of LIG's telemarketing processes.

22.    Furthermore, LIMA is also personally liable because he was responsible for ensuring LIG' employees' TCPA compliance.

## IV.    **Factual Allegations**

23.     LIG provides "merchant cash advance" loans to companies.

24.     LIG uses telemarketing to promote its products or services.

25.     LIG's telemarketing efforts include the use of automated dialing equipment to send automated calls.

26.     In or about June 14, 2017, Plaintiff received the first of multiple "robocall" solicitations by Defendants and/or their agents at Plaintiff's personal mobile telephone, 484-626-3942. Plaintiff had not consented to this solicitation.

27.     The unsolicited telephone call was placed to Plaintiff's personal mobile telephone number and utilized an "automatic telephone dialing system" or "robocall" to transmit a message, as prohibited by 47 U.S.C. § 227(b)(1)(B).

28.     The telephone call was a "robocall" made using an automatic telephone dialing system because there was a delay before an agent answered the phone, and because the call made a characteristic computerized "balloon popping" sound, just before the call was connected.

29.     The call on June 14 was "spoofed" with fake caller ID information of 484-810-1716, a number that, upon calling back, always is "busy" with a quintessential "boop, boop, boop…" It also displayed fake caller ID location of "Springfield, PA".

30.     During that call, Plaintiff took steps to ascertain the identity of the caller and feigned interest for this exact reason, namely by requesting that the caller send Plaintiff an e-mail with their company information. Plaintiff received an e-mail from "John Paul Elias" on June 14, 2017 at 12:37 PM. However, Plaintiff never consented to receiving an additional telemarketing calls.

31.     As a point of fact, to the extent that "consent" was supplied during the call, that was done in order to discover the identity of the caller and for no other reason. Courts have held this to be

8

legitimate and have not held such "consent" to be detrimental to a plaintiff bringing a TCPA action. *See* for instance, Bank v. Caribbean Cruise Line, which held that "Purporting to obtain consent during the call, such as requesting that a consumer "press 1" to receive further information, does not constitute the prior consent necessary to deliver the message in the first place, as the request to "press 1" is part of the telemarketing call.... As the FCC has stated, the consent must be made before the call."

32.     Despite this, Plaintiff received another telemarketing call on June 14, 2017 from the same caller ID. This call, like the first, was an illegal robocall, and, like many robocalls, played a machine noise, which is characteristic of an automatic telephone dialing system. The call was "spoofed" with fake caller ID information of 484-810-1716.

33.     Upon answering, Plaintiff received a scripted sales pitch about business loans from "Biscayne Capital Funding". Plaintiff was not interested in a loan and did not give the Defendants consent to call back.

34.     Plaintiff then received a call from (305) 509-1016 at 11:50 AM on June 15, 2017. Plaintiff did not recognize the number, so he allowed it to go to his voicemail.

35.     On June 19, 2017, Plaintiff received another automated call from the same number, (305) 509-1016. This time, Plaintiff heard a distinctive click and pause, prior to being connected to a human being. Plaintiff briefly spoke with Carlos Maloff, a Funding Director at Biscayne Capital Funding a/k/a LIG. Plaintiff received a scripted sales pitch about business funding. Plaintiff received an e-mail from Maloff, but did not give him permission or consent to call back.

36.     On June 21, 2017, Plaintiff received a robocall from (786) 528-2360. The call was a "robocall" because there was a distinctive click and pause before the other party answered.

37.      Plaintiff spoke to the agent and received a scripted sales pitch about business loan and/or merchant cash advance services.

38.      The unsolicited "robocall" was transmitted false caller ID information which was deliberately used by the Defendants in order to conceal their identity and illegal actions.

39.      On July 27, 2017 at 5:45 PM local time, Plaintiff was on vacation in the Netherlands, when he received a call from (484) 268-5802. Upon answering, Plaintiff heard dead air, and said "hello" into his phone multiple times. This was followed by a "boop", and the call disconnected. This is indicative of an automatic telephone dialing system being used to make the call.

40.      On July 27, 2017 at 8:26 PM local time, Plaintiff was still on vacation in the Netherlands, and while eating dinner, he received a call from the same number above, (484) 268-5802. Plaintiff got up from his chair to answer the phone, but he experienced the same situation- dead air, followed by the call disconnecting. The sudden call abandonment is indicative of an automated telephone dialing system being used to make the call.

41.      To his dismay and further frustration, Plaintiff was charged $0.40 for both of the calls that took place while he was overseas, since he pays by the minute while roaming overseas.

42.      On August 1, 2017, after returning to the United States, Plaintiff received another robocall from the Defendants, utilizing the same caller ID, (484) 268-5802. Plaintiff heard another distinctive click and pause, before being connected to an agent. This time, Plaintiff spoke with Carlos Maloff again, at 2:08 PM. Plaintiff received a scripted sales pitch about business funding. Plaintiff received another email from the Defendants the same day at 2:46 PM.

43.      On August 3, 2017, Plaintiff received a missed call (automated) from the Defendants who were utilizing the same number, (484) 268-5802 at 12:55 PM.

10

44.     On August 4, 2017, Plaintiff received another robocall from (484) 268-5802 at 9:33 AM. Upon answering, the call suddenly disconnected.

45.     On August 4, 2017, Plaintiff received another robocall from (484) 268-5802 at 10:15 AM. Upon answering, the call suddenly disconnected.

46.     Plaintiff received additional robocalls from (484) 268-5802 on the following dates and times: August 8, 2017 at 9:22 PM, August 9, 2017 at 10:41 AM, August 21, 2017 at 9:41 AM, August 23, 2017 at 9:54 AM, and August 29, 2017 at 9:54 AM. Plaintiff understood these calls to be made using an automatic telephone dialing system due to specific characteristics of each call, including distinctive click and pauses followed by sudden call abandonment.

47.     Plaintiff received an another robocall from (484) 268-5802 on September 15, 2017 (after Plaintiff filed the instant lawsuit). Plaintiff heard a click and pause, and then spoke with Carlos Maloff, and received a scripted sales pitch about business funding. This time, Plaintiff told Maloff that he had filed this lawsuit for violations of the TCPA and demanded not to receive any additional calls. The call was then disconnected.

48.     Plaintiff received a missed call from the Defendants with the caller ID (484) 268-5802 on November 6, 2017 at 11:05 AM.

49.     Plaintiff received another robocall from the Defendants with the caller ID (484) 268-5802 at November 6, 2017 at 11:05 AM. Plaintiff was not able to successfully speak to anyone.

50.     At no time did Plaintiff provide Defendants his telephone number.

51.     Plaintiff's personal cellular telephone number, 484-626-3942, has been successfully registered on the National Do-Not-Call Registry since June 26, 2015.

52.     To the extent Defendants contend that they obtained consent or agreement from Plaintiff for the calls at issue here, the Telemarketing Sales Rule, 16 C.F.R. § 310.5(a)(5), requires that

11

such records be maintained. In any event, consent is an affirmative defense under the TCPA, and is unavailable unless Defendants can show that they had prior express consent in writing, and that they have otherwise complied with all of the requirements of 47 C.F.R. § 64.1200(c)(2), including maintaining written procedures on national do-not-call rules, training personnel on national do-not-call rules, maintaining an internal do-not-call list, and accessing the national do-not-call database no more than 31 days prior to making any calls, and maintaining records documenting such access.

53.     Additionally, to the extent Plaintiff seeks to recover damages for these violations, see Charvat v. NMP, LLC, in which the Sixth Circuit Court of Appeals held that it is possible to allege violations of BOTH subsections of 47 USC § 227(b) [robocalls] and 47 USC § 227(c) [other violations], allowing for multiple violations per call. See also, Lary v. Trinity Physician Fin. & Ins. Servs., in which the 11th Circuit, under 6th Circuit guidance in the Charvat cases, found that it is possible, beyond alleging multiple violations per call based on overall subsection (as in the Charvat case), to allege multiple violations within each subsection, such as the failure to place a number on an internal DNC or provide a copy of a do-not-call policy (both of which are violations of 47 CFR 64.1200(d)(1) and (d)(3), and 47 USC § 227(c) [ie. Subsection C]).

54.     Plaintiff pays for each incoming and outgoing call on his telephone under an unlimited calling arrangement, as defined and set forth in 47 CFR § 64.1200(a)(1)(iii).

55.     Plaintiff received the calls on his private mobile telephone, as defined and set forth in 47 CFR § 64.1200(a)(1)(iii). Plaintiff's telephone number is registered with T-Mobile as a cellular telephone number and is used for personal purposes.

56.     These telephone solicitations constituted "calls" under the TCPA that were not for emergency purposes.

57.     Plaintiff did not provide any one, more, or all Defendants, nor any agent of Defendants, prior express written consent, or any other form of consent, express or implied, to cause Plaintiff to receive telephone calls on his personal telephone.

58.     Plaintiff had no prior business relationship with any one, more, or all of Defendants.

59.     Plaintiff was harmed by these calls. Plaintiff was temporarily deprived of legitimate use of his phone because the phone line was tied up during the telemarketing calls and his privacy was improperly invaded. Moreover, these calls injured Plaintiff because they were frustrating, obnoxious, annoying, were a nuisance and disturbed the solitude of plaintiff and the class. The calls caused Plaintiff's cell phone battery's depletion, used up cellular data, and prevented Plaintiff from otherwise using his telephone for lawful purposes.

### Causes Of Action

### First Cause of Action

(Negligent Violation of the TCPA "RoboCall" Prohibition, 47 U.S.C. § 227 et seq.)

60. Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

61.  As a result of Defendants' and Defendants' agents negligent violations of 47 U.S.C. § 227(b)(1)(A), Plaintiff seeks for himself $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

62. Pursuant to 47 U.S.C. § 227(b)(3)(A), Plaintiff seeks injunctive relief prohibiting such conduct in the future.

### Second Cause of Action

(Knowing and/or Willful Violation of the TCPA "RoboCall" Prohibition, 47 U.S.C. § 227 et seq.)

13

63. Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

64. As a result of Defendants' and Defendants' agents knowing and/or willful violations of 47 U.S.C. § 227(b)(1)(A), Plaintiff seeks for himself treble damages, as provided by statute, up to $1,500.00 for each and every violation, pursuant to 47 U.S.C. § 227(b)(3).

65.  Pursuant to 47 U.S.C. § 227(b)(3)(A), Plaintiff seeks injunctive relief prohibiting such conduct in the future.

### Third Cause of Action

(Negligent Violation of the TCPA "Sales Call" Prohibition, 47 U.S.C. § 227 et seq.)

66. Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

67. As a result of Defendants' and Defendants' agents negligent violations of 47 U.S.C. § 227(c)(3)(F), and 47 C.F.R. 64.1200(c)(2), Plaintiff seeks for himself $500 in statutory damages for each and every violation, pursuant to 47 U.S.C. § 227(c)(3)(F).

68.  Pursuant to 47 U.S.C. § 227(c)(5)(A), Plaintiff seeks injunctive relief prohibiting such conduct in the future.

### Fourth Cause of Action

(Knowing and/or Willful Violation of the TCPA
"Sales Call" Prohibition, 47 U.S.C. § 227 et seq.)

69. Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

70. As a result of Defendants' and Defendants' agents knowing and/or willful violations

14

of 47 U.S.C. § 227(c)(3)(F), and 47 C.F.R. 64.1200(c)(2), Plaintiff seeks for himself treble

damages, as provided by statute, up to $1,500.00 for each and every violation, pursuant to 47

U.S.C. § 227(c)(5).

71.  Pursuant to 47 U.S.C. § 227(c)(5)(A), Plaintiff seeks injunctive relief prohibiting

such conduct in the future.

**WHEREFORE, Plaintiff prays for relief against defendants, and each of them, as follows:**
### V.      Prayer for Relief

On Causes of Action 1-4:

1.  For awards of $500 for each negligent violation as set forth in actions 1-6.

2.  For awards of $1,500 for each knowing and/or willful violation as set forth in actions
1-6.

3.  Injunctive relief against Defendants, and each of them, to prevent future wrongdoing;
Total statutory damages: **$60,000** (Twenty counts each of: "Sales call to a number registered on
the National Do-Not-Call Registry" and "Failure to Put Plaintiff's Number on Defendants' Do-
Not-Call list", with treble damages for each.)

4.  Prejudgment interest at the maximum legal rate;

5.  Costs of suit herein incurred; and

6.  All such other and further relief as the Court deems proper.

## VI.    <u>Demand for Jury Trial</u>

Plaintiff hereby demands a trial by jury on all claims so triable.

Dated: November 29, 2017

_James E Shelton_

James Everett Shelton
*Plaintiff, Pro Se*
316 Covered Bridge Road
King of Prussia, PA 19406
Phone: 484-626-3942
Jeshelton595@gmail.com

16